FILED
United States Court of Appeals
Tenth Circuit

**January 13, 2009**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

WIDYA FEBRINA RAHADI;
HARIYANI GESTAF LALUJAN,

      Petitioners,

v.

MICHAEL B. MUKASEY,
United States Attorney General,

      Respondent.

No. 08-9534
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

Petitioners Widya Febrina Rahadi and Hariyani Gestaf Lalujan, wife and

husband, are Christian citizens of Indonesia, a predominantly Muslim nation.

They challenge an order of the Board of Immigration Appeals (BIA) upholding an

Immigration Judge's (IJ) denial of their application for restriction on removal and

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

relief under the Convention Against Torture (CAT). In addition, Mr. Lalujan petitions for review of the BIA's denial of his application for cancellation of removal.[1] Because the BIA's decision is supported by substantial evidence, we exercise our jurisdiction under 8 U.S.C. § 1252(a) to deny the petition.

## I. Background

Petitioners are practicing Christians who came to the United States separately. Ms. Rahadi arrived in this country on December 11, 1999 as a nonimmigrant visitor authorized to stay until June 10, 2000. Mr. Lalujan also came to the United States on a nonimmigrant-visitor visa, arriving on November 27, 1990; he was authorized to remain until May 26, 1991. They married in early January 2000, and had a son in March of 2001, who is a United States citizen. In 2003, they applied for asylum, restriction on removal, and CAT protection, claiming persecution on account of their religion. Mr. Lalujan also applied for cancellation of removal. The IJ held a hearing in May of 2006, at which Ms. Rahadi testified that while living with her parents in Indonesia, her family discovered in 1995 that she had attended Christian services. As a consequence, they beat her with a bamboo stick and yelled at her. She also described another time her family punished her for attending Christian services.

---

[1]     Petitioners do not challenge on appeal to this court the agency's denial of their asylum request, apparently conceding its untimeliness. Mr. Lalujan is a derivative applicant of his wife's application for withholding of removal and CAT protection. In addition, petitioners have abandoned their motion to remand based on new evidence.

In 1998, they beat her with a belt, her father burned her cheek with a cigarette, her mother cut her hair to throw away bad luck, and they locked her in her room for three days without food. Ms. Rahadi also testified that her parents threatened to have her circumcised and to kill her if she continued her Christian activities. Both petitioners testified that they and their son, as Christians, would not be safe in Indonesia. Both also testified that Mr. Lalujan's mother, his siblings, and their children were all Christians living in Indonesia and have suffered no harm on account of their faith. In addition, Mr. Lalujan's mother had visited the United States the prior year, and she returned willingly to Indonesia.

The IJ denied petitioners' asylum application as untimely; denied restriction on removal, holding that Ms. Rahadi failed to establish past persecution and that petitioners did not establish that it would be more likely than not that they would suffer future persecution if removed to Indonesia; denied Mr. Lalujan's application for cancellation of removal; and denied CAT protection. The IJ granted petitioners' request for voluntary departure.

Petitioners appealed to the BIA. The BIA issued its decision affirming the IJ by a brief order signed by a single board member. *See* 8 C.F.R. § 1003.1(e)(5). First, it ruled that petitioners' asylum application was untimely and they did not qualify for an exception to the one-year filing deadline because they did not establish changed or extraordinary circumstances. The BIA next held that the mistreatment Ms. Rahadi had suffered at the hands of her family did not rise to

-3-

the level of past persecution, and petitioners had failed to show that it is more likely than not that they will be persecuted on account of their faith if returned to Indonesia. In support, it reviewed official country reports and noted that numerous members of Mr. Lalujan's family are Christians and are living in Indonesia without incident. The BIA also held that petitioners had not shown they are entitled to CAT protection. Finally, the BIA upheld the IJ's decision to deny Mr. Lalujan cancellation of removal because he did not demonstrate that his removal to Indonesia would result in exceptional and extremely unusual hardship to his young son.

In their appeal to this court, petitioners argue that the agency (1) violated Mr. Lalujan's consitutional due process rights when evaluating his request for cancellation of removal; (2) failed to make a credibility finding, thus requiring petitioners' testimony to be taken as true; (3) erred in holding that Ms. Rahadi failed to establish past persecution; (4) erred in finding that it is not more likely than not that petitioners will suffer future persecution in Indonesia; and (5) conflated their claims under the CAT with other claims and erred in denying them CAT protection. They also argue for the first time that they will be persecuted in Indonesia because they have lived in the United States and they have a son who is a United States citizen. As noted above, petitioners have abandoned on appeal their asylum claim.

## II. Discussion

Because the BIA's decision was issued by a single board member, we review the BIA's decision as the final order of removal, but "we may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). "We review the BIA's findings of fact under the substantial evidence standard, and its legal determinations *de novo*." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008). "Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Sarr*, 474 F.3d at 788-89 (quotation omitted).

### A. Cancellation of Removal

The BIA upheld the IJ's determination that Mr. Lalujan failed to establish his entitlement to cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1) (authorizing cancellation of removal for certain nonpermanent residents). Mr. Lalujan concedes that this court has no jurisdiction to review the discretionary denial of cancellation of removal. *See id.* § 1252(a)(2)(B)(i). Although he now asserts that his constitutional rights were abridged during the administrative hearing, he did not raise this issue to the BIA, which normally would preclude our review. *See id.* § 1252(d)(1). But constitutional questions may be excepted from the exhaustion requirement. *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1094 (10th Cir. 2008). Mr. Lalujan frames his argument as a

constitutional issue, asserting he was denied due process by the IJ's conduct of the hearing when he limited the time available for testimony on this claim. In addition, Mr. Lalujan argues his due-process rights were abridged when the IJ did not evaluate on the record the relevant factors of his age, health, and the financial and educational impact that Mr. Lalujan's removal would have on his son.[2] He maintains these deficiencies denied him a fair hearing.

Mr. Lalujan offers no authority to support this court's jurisdiction over this claim. To the contrary, "objections to procedural errors or defects that the BIA could have remedied must be exhausted even if the alien later attempts to frame them in terms of constitutional due process on judicial review." *Id.* Not only did Mr. Lalujan fail to seek relief from the BIA, but the language quoted in his appellate brief as showing that the IJ rushed the hearing was not attributable to the IJ, but to opposing counsel. *See* Aplt. Br. at 17; Admin. R. at 226.

We also reject Mr. Lalujan's claim that he was denied due process by the IJ's failure to consider all relevant factors on the record.

> [E]ven if we had jurisdiction, we discern no error. The BIA is not required to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted. That standard was satisfied.

---

[2]    The IJ evaluated on the record the hardship to Mr. Lalujan's son if Mr. Lalujan were removed to Indonesia, but concluded that the hardship did not qualify as exceptional and extremely unusual, as required for cancellation of removal. Admin. R. at 123-25.

*Ismaiel v. Mukasey*, 516 F.3d 1198, 1207 (10th Cir. 2008) (citation and quotations omitted).

## B. Credibility

Petitioners next claim that because the IJ did not make a credibility finding, their respective testimony must be taken as true. They maintain that Ms. Rahadi's testimony about her baptism and her family's threats to circumcise her "are central to this case." Aplt. Br. at 20. The IJ stated on the record that he found both petitioners to be credible, although this finding is not included in the IJ's oral ruling. Admin. R. at 299-300. Petitioners assert that the BIA addressed Ms. Rahadi's credibility by characterizing as "disingenuous" her claim that she was not a Christian until her baptism in 2004, *id.* at 3, but this argument relates only to the abandoned asylum claim. Otherwise, the BIA accepted as true petitioners' testimony, including Ms. Rahadi's statements that her family threatened her with circumcision. But the BIA also accepted as true her statements that she easily dissuaded them from carrying out this threat. Petitioners have identified no reversible error relating to the credibility issue.

## C. Restriction on Removal

An alien is entitled to restriction on removal if "the alien's life or freedom would be threatened in th[e] country [of removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

An alien may create a rebuttable presumption of eligibility for restriction on removal by either (1) demonstrating past persecution in the proposed country of removal on account of one of the protected grounds; or (2) showing that it is more likely than not that the alien would be subject to persecution on one of the specified grounds upon returning to the proposed country of removal.

*Sidabutar v. Gonzales*, 503 F.3d 1116, 1123-24 (10th Cir. 2007) (citations and quotations omitted). "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive, and requires more than just restrictions or threats to life and liberty." *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (quotation omitted). "In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Vicente-Elias*, 532 F.3d at 1091.

### *(i) Past persecution*

Ms. Rahadi challenges the BIA's determination that she did not suffer past persecution, citing her credible testimony that her family members had beaten her repeatedly, burned her on the cheek, and confined her for several days. She also testified that they threatened her with circumcision and death. The BIA rejected this argument, finding that the mistreatment Ms. Rahadi suffered at the hands of her family did not amount to persecution. She described only two incidents of physical abuse, which occurred in 1995 and 1998. She was able to dissuade her

parents from circumcising her by arguing that she was not ready to marry. Moreover, despite these incidents, Ms. Rahadi continued to live with her parents until she departed for the United States in December 1999. Furthermore, she was permitted to leave her home for extended periods, including overnight, for college and employment. We agree with the BIA that this does not rise to past persecution. *See, e.g.*, *Kapcia v. INS*, 944 F.2d 702, 704-05 (10th Cir. 1991) (holding no past persecution where alien had twice been detained for two-day periods during which he was beaten and interrogated; his parents' home had been searched; his work locker had been repeatedly broken into; and he had been assigned poor work tasks, denied bonuses, and conscripted into the army, where he was constantly harassed).

### *(ii) Future persecution*

Both petitioners claim they will suffer future persecution based on their religion if removed to Indonesia. Relying on the 2005 Country Report on Human Rights Practices for Indonesia and the 2006 State Department's International Religious Freedom Report for Indonesia, the BIA determined that the Indonesian government recognized Protestantism as one of five religions permitted the right to worship, religious freedom was available to most Indonesians, and the government officially encouraged racial and ethnic tolerance. Admin. R. at 4. The BIA concurred with the IJ's conclusion that there are areas of Indonesia to which petitioners could relocate where attacks on Christians are minimal. Also,

the BIA noted that numerous members of Mr. Lalujan's family are Christians living in Indonesia without harm. Petitioners have not met their burden of proof that they could not relocate to a relatively safe area of Indonesia. *See* 8 C.F.R. § 1208.16(b)(2). On this record, we cannot say that any reasonable adjudicator would be compelled to find that it is more likely than not that petitioners will suffer future persecution in Indonesia on the basis of their Christian faith.

In addition to persecution based on their Christian faith, both petitioners assert that they will be persecuted in Indonesia because they have lived in the United States and they have a son who is a United States citizen. Petitioners have raised this issue for the first time in their appeal to this court. Therefore, they have not exhausted their administrative remedies for this claim, and this court may not review it. 8 U.S.C. § 1252(d)(1); *Sidabutar*, 503 F.3d at 1118 ("[W]e generally assert jurisdiction only over those arguments that a petitioner properly presents to the BIA.").

### D. Convention Against Torture

"To receive the protections of the CAT, an alien must demonstrate that it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Sidabutar*, 503 F.3d at 1125 (quotations omitted). Unlike a claim for asylum or withholding of removal, "there is no requirement that the petitioners show that torture will occur on account of a statutorily protected ground." *Id.* (quotation omitted).

Petitioners complain that the agency conflated their CAT claim with their other applications, but they do not identify any evidence or legal authority the agency misconstrued. Moreover, their cursory appellate argument relies on Ms. Rahadi's testimony and an unofficial report stating that converts from Islam "are persecuted by fanatics or placed under pressure by their own families." Aplt. Br. at 29 (quotation omitted). Neither the citation to the report nor Ms. Rahadi's testimony indicates that any alleged torture would be inflicted by a public official or at the instigation or with the acquiescence of such an official. Accordingly, we hold the BIA's determination is supported by substantial evidence.

## III. Conclusion

For the foregoing reasons, petitioners' claims are without merit and we DENY the petition for review.

Entered for the Court


Monroe G. McKay
Circuit Judge